No. 23-11130-A

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

SHELLEY CARRIER, as the Personal Representative of
the Estate of DORIS HADCOCK,

*Plaintiff-Appellant,*

v.

JEST OPERATING, INC. d/b/a SOMERSET, PATRICIA R. LEININGER,
MEREDITH C. NAGEL, MERIDETH NAGEL, P.A.,
and ELIZABETH HEIMAN,

*Defendants-Appellees,*

Appeal from the United States District Court
For the Middle District of Florida, Ocala Division

No. 5:20-cv-00095-JSM-PRL

---

## APPELLANT'S OPENING BRIEF

---

BLEAKLEY BAVOL DENMAN & GRACE

Grant W. Kindrick, Esq.
Victoria M. McLaughlin, Esq.
15316 N. Florida Avenue
Tampa, Florida 33613
Telephone: (813) 221-3759
Facsimile: (813) 221-3198
*Attorneys for Appellant, Shelley Carrier as*
*Personal Representative of the Estate of*
*Doris Hadcock*

**No. 23-11130-A**
**Shelley Carrier v. Jest Operating, Inc.**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Undersigned counsel certifies the following persons may have an interest in the outcome of this case:

Bleakley Bavol Denman & Grace, Counsel for the Estate of Doris Hadcock

Braga, Vanessa Braga, Counsel for Jest Operating, Inc., and Elizabeth Heiman

Campione & Hackney, P.A., Counsel for Merideth Nagel and Merideth Nagel, P.A.

Carrier, Kevin, Heir to the Estate of Doris Hadcock

Carrier, Shelley, Heir to the Estate of Doris Hadcock

Claycomb, Lee, Heir to the Estate of Doris Hadcock

Claycomb, Linda, Heir to the Estate of Doris Hadcock

Denman, J. Ronald, Counsel for the Estate of Doris Hadcock

Estate of Doris Hadcock, Plaintiff

George, Robert, Counsel for Merideth Nagel and Merideth Nagel, P.A.

Grace, Robert J., Jr., Counsel for the Estate of Doris Hadcock

Hackney, Harry, Counsel for Merideth Nagel and Merideth Nagel, P.A.

Hadcock, Gerald, Heir to the Estate of Doris Hadcock

Hadcock, Heir to the Estate of Doris Hadcock

Heiman, Elizabeth, Defendant

Jest Operating, Inc d/b/a Somerset, Defendant

Khanal, Robindra, Counsel for Jest Operating, Inc., and Elizabeth Heiman

Kindrick, Grant, Counsel for the Estate of Doris Hadcock

Klavon, Pamela, Counsel for Merideth Nagel and Merideth Nagel, P.A.

Leininger, Patricia, Defendant

McLaughlin, Victoria, Counsel for the Estate of Doris Hadcock

McLin Burnsed, P.A., Counsel for Patricia Leininger

Merideth Nagel, P.A., Defendant

The Honorable James Moody, Jr, Senior District Judge for the U.S. District
    Court, Middle District of Florida, Tampa Division

Nagel, Merideth, Defendant

Quintairos, Prieto, Wood & Boyer, P.A., Counsel for Jest Operating, Inc.,
    and Elizabeth Heiman

Smith, Phillip, Counsel for Patricia Leininger

The Honorable Michael G. Takac, Circuit Judge for the Fifth Judicial Circuit
    Court, in and for Lake County, Florida

The Liles Firm, P.A., Counsel for Merideth Nagel and Merideth Nagel, P.A.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules. Oral argument should be heard because the record is extensive, this appeal is fact-intensive, and this Court must answer one issue de novo. Accordingly, oral argument will assist this Court.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Statement Regarding Oral Argument ........................................................................ i

Table of Contents ..................................................................................................... ii

Table of Citations .....................................................................................................v

Jurisdictional Statement ......................................................................................... ix

Statement of the Issues.............................................................................................1

Statement of the Case...............................................................................................2

    I.    Nature of The Case ........................................................................................2

    II.   Statement of Facts ........................................................................................3

    III.  Course of Proceedings................................................................................11

    IV.  Standard of Review .....................................................................................15

Summary of the Argument......................................................................................16

Argument.................................................................................................................19

    I.    The Trial Court Abused Its Discretion in Excluding the Testimony and Report of Kathryn Strodel ...................................................................................19

        A.   The District Court Erred by Excluding Relevant Evidence Relating to Kathryn Strodel in Support of Doris' Claims. .................................................20

        B.   Plaintiff was Substantially Prejudiced and Her Substantial Rights Were Affected by the Exclusion of Evidence Relating to Strodel. ...........................21

        C.   Strodel's Testimony Was Not Cumulative and Was Necessary for Plaintiff to Pursue the Claims Against Defendants.......................................................25

II.    The Trial Court Abused Its DiscretionbBy Excluding Evidence and Testimony Relating to Neal's Probate .................................................26

    A.    The District Court Erred by Excluding Relevant Evidence Relating to Neal's Probate in Support of Doris' Claims. ...................................26

    B.    The District Court's Exclusion of Evidence Related to Neal's Probate Substantially Prejudiced Plaintiff and Affected Plaintiff's Substantial Rights by Preventing Her from Effectively Pursuing Her Claims Against Defendants. .29

III.    The Trial Court Erred in Granting Defendants' Motions for Directed Verdict 31

    A.    The District Court Improperly Usurped the Role of Jury, Dismissing Facts in Evidence Related to Surviving Causes of Action on Directed Verdict Resulting in Substantial Prejudice to Plaintiff. ................................33

    B.    The District Court Erred in Dismissing the Elder Exploitation Claim on Directed Verdict Based on an Absence of Economic Damages Because Section 825.103, Florida Statutes, Contains no Limitation Precluding Recovery of Noneconomic Damages. ...................................................................37

    C.    Plaintiff Adduced Evidence at Trial Sufficient to Avoid Directed Verdict Even if the Elder Exploitation Claims Were Limited to Economic Losses. ...41

IV.    The Trial Court Abused Its Discretion by Excluding Significant Evidence Of Neal's Residency at Somerset, Which Substantially Prejudiced Plaintiff .....42

    A.    The Trial Court Erred by Excluding Relevant Evidence of Neal's Residency at Somerset in Support of Doris' Claims. ......................................43

    B.    The Trial Court's Exclusion of Evidence Related to Neal's Residency at Somerset Substantially Prejudiced Plaintiff by Preventing Her from Effectively Pursuing Her Claims Against Somerset.........................................................47

Conclusion .........................................................................................49

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements...........................................................................51

Certificate of Service ................................................................................52

# TABLE OF CITATIONS

## Cases

*Allen v. Montgomery Cnty., Ala.*,
   788 F.2d 1485 (11th Cir. 1986) ............................................................ 21, 29, 47

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................. 33, 35

*Anderson v. WBMG-42*,
   253 F.3d 561 (11th Cir. 2001) ............................................................................16

*Bauer Lamp Co., Inc. v. Shaffer*,
   941 F. 2d 1165 (11th Cir. 1991) .......................................................................42

*Buland v. NCL (Bahamas), Ltd.*,
   992 F.3d 1143 (11th Cir. 2021) ........................................................................16

*Cook ex. Rel. Estate of Tessier v. Sheriff of Monroe Cty.*,
   402 F.3d 1092 (11th Cir. 2005) ........................................................................16

*Friedel v. Park Place Cmty. LLC*,
   747 F. App'x 775 (11th Cir. 2018) ....................................................................15

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ...........................................................................................15

*Hagan v. Coca-Cola Bottling Co.*,
   804 So. 2d 1234 (Fla. 2001) ..............................................................................39

*Hartman v. Snelders*,
   No. 04 CV 1784 (CLP), 2010 WL 11626508 (E.D.N.Y. Jan. 28, 2010) ...........46

*Howard v. Gonzales*,
   658 F.2d 352 (5th Cir. 1981) ............................................................................21

*Johns v. Jarrod*,
   927 F.2d 551 (11th Cir. 1991) ..........................................................................33

*Kotteakos v. United States*,
   328 U.S. 750 (1946) ......................................................................21

*Lummus v. Fla. Adirondack School*,
   123 Fla. 810 (Fla. 1934) ...............................................................37

*MacPherson v. Univ. of Montevallo*,
   922 F. 2d 766 (11th Cir. 1991) .....................................................41

*McLean v. GMAC Mortg. Corp.*,
   398 Fed. Appx. 467 (11th Cir. 2010) ........................................ 39, 40

*Miami Herald Pub. Co. v. Brown*,
   66 So. 2d 679 (Fla. 1953) ........................................................ 39, 40

*Mitchell v. State*,
   491 So. 2d 596 (Fla. 1st DCA 1986) .............................................44

*Oxford Furniture Cos., Inc. v. Drexel heritage Furnishings, Inc.*,
   984 F. 2d 1118 (11th Cir. 1993) ....................................................41

*Parish v. City of Elkhart*,
   702 F.3d 997 (7th Cir. 2012) ........................................................46

*Rollins v. Pizzarelli*,
   761 So. 2d 294 (Fla. 2000) ....................................................... 37, 39

*Roundtree v. Bowers*,
   No. 22-11557, 2022 WL 17986182 (11th Cir. 2022) ...................... 16, 20, 29, 47

*Rowell v. Holt*,
   850 So. 2d 474 (Fla. 2003) ....................................................... 39, 40

*Saadeh v. Connors*,
   166 So. 3d 959 (Fla. 4th DCA 2015) ............................................27

*State v. Jefferson*,
   758 So. 2d 661 (Fla. 2000) ............................................................37

*Stewart v. Hooters of Am., Inc.*,
    No. 8:04-cv-40-T-17-MAP, 2007 WL 1752873, (M.D. Fla. June 18, 2007)43, 46

*Stoe v. Garland*,
    No. 16-1618 (JDB), 2021 WL 4169313 (D.C. Cir. Sept. 14, 2021) ..................46

*Tucker Nursing Ctr., Inc. v. Mosby*,
    692 S.E.2d 727 (Ga. Ct. App. 2010) ....................................................................44

*U.S. v. Alfaro-Moncada*,
    607 F.3d 720 (11th Cir. 2010) ..............................................................................43

*U.S. v. Archible*,
    No. 21-14172, 2022 WL 16833770 (11th Cir. 2022) ............................ 27, 43, 46

*U.S. v. Dodds*,
    347 F.3d 893 (11th Cir. 2003) ..............................................................................43

*U.S. v. Gonzalez*,
    718 F. Supp. 2d 1341 (S.D. Fla. 2010) ......................................................... 26, 43

*U.S. v. Ring*,
    706 F.3d 460 (D.C. Cir. 2013) ..............................................................................46

**Statutes**

12 U.S.C.A. § 2601(a)...............................................................................................40

28 U.S.C. § 1291 ..................................................................................................... vii

28 U.S.C. § 1332(a)(1)............................................................................................ vii

Fla. Stat. § 429.24(1)................................................................................................35

Fla. Stat. § 429.24(2)................................................................................................35

Fla. Stat. § 429.28(1)(a) ..........................................................................................45

Fla. Stat. § 744.108 .................................................................................................27

Fla. Stat. § 772.11 ...................................................................37

Fla. Stat. § 825.103 (2022)............................ 12, 13, 15, 27, 32, 37, 38, 40

Fla. Stat. ch. 429..................................................................45

N.Y. Mental Hyg. Law §81.09 (McKinney)............................................19

## Other Authorities

Fla. Att'y Gen. Op. 96–94 (1996)....................................................27

H.R. Fla. Staff An., No. 1041 (Fla. May 5, 2021) ..................................38

## Rules

11th Cir. R. 28-1 .................................................................. i

11th Cir. R. 32-4 ..................................................................51

Fed. R. App. P. 32 .................................................................51

Fed. R. App. P. 34 ................................................................. i

Fed. R. Evid. 103 ..................................................................20

Fed. R. Evid. 401 ........................................................ 26, 27, 43

Fed. R. Evid. 403 ..................................................................46

## JURISDICTIONAL STATEMENT

The Trial Court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity of citizenship) because the amount in controversy exceeded seventy-five thousand dollars ($75,000) and the parties have complete diversity. Plaintiff is, and throughout the course of proceedings, was domiciled in the State of New York, and none of Defendants are domiciled in the State of New York.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of a district court. The Trial Court entered final judgment on March 6, 2023, which disposed of all claims. Doc. 386. Plaintiff-Appellant timely filed the notice of appeal on April 4, 2023. Doc. 408.

## STATEMENT OF THE ISSUES

I.    Did the Trial Court abuse its discretion by excluding the testimony and report of Kathryn Strodel, preventing Plaintiff from effectively pursuing and presenting her claims against Defendants?

II.   Did the Trial Court abuse its discretion by excluding evidence and testimony relating to Neal Hadcock's Probate, preventing Plaintiff from effectively pursuing and presenting her claims against Defendants?

III.  Did the Trial Court err in granting Defendants' motions for directed verdict and improperly excluding evidence related to non-economic damages?

IV.   Did the Trial Court abuse its discretion by excluding significant evidence related to Neal Hadcock's residency at Somerset Assisted Living Facility, preventing Plaintiff from effectively pursuing and presenting her claims against Defendants?

## STATEMENT OF THE CASE

## I.    NATURE OF THE CASE

Doris Hadcock ("Doris") initiated the action underlying the instant appeal after she was harmed by the negligence, abuse, exploitation, and confinement at the hands of her court-appointed guardian, various attorneys, an assisted living facility and its administrator, and others. Doc. 60. As a result of her Florida guardianship and her detainment at Somerset Assisted Living Facility ("Somerset"), Doris was left homeless, penniless, and dependent on her longtime friends, Shelley and Kevin Carrier, for support. Doc. 202 – Pg 157:13-158:10; Doc. 425 – Pg 172:23-25. Defendants' actions also stripped Doris of many of her basic rights and prevented Doris from regaining those rights for several years. Doc. 424 – Pg 81:14-82:4; *id.* at Pg 189:10-20. Doris was even separated from her husband and deprived of her right to live out the remainder of her life with her husband of nearly seventy years. Doc. 425 – Pg 168:2-5.

Following the trial on the issues raised in the underlying action, the jury rendered a verdict in favor of the Defendants on all but one count. Doc. 381. This verdict was substantially affected by several of the Trial Court's rulings on the admissibility of evidence and *ore tenus* motions for directed verdict. Doc. 421 – Pg 6-12:10; Doc. 423: 67:20-68:3; *id.* at Pg 124:15-133:19; Doc. 426 – Pg 27:24-34:3;

*id.* at Pg 147:1-153:6; *id.* at Pg 141:14-145:21; *id.* at 220:12-227:17; *id.* at 229:10-232:1; Doc. 317. As a result, this appeal follows. Doc. 408.

## II.  STATEMENT OF FACTS

Doris was ninety (90) years old at the time she initiated the instant action against Somerset, Patricia R. Leininger ("Leininger"), Merideth C. Nagel ("Nagel"), Merideth C. Nagel, P.A., Elizabeth Heiman ("Heiman"),, and others (collectively "Defendants") alleging claims sounding in false imprisonment, breach of fiduciary duty, professional negligence, negligence, intentional infliction of emotional distress, and elder exploitation arising out of Defendants' conduct during her Florida guardianship and her confinement at Somerset in Tavares, Florida. Doc. 60.

Doris was born in 1929 in New York, where she spent most of her life, and married her husband, Neal Hadcock ("Neal") in 1948. Doc. 202 – Pg 6:24-7:2; *id.* at Pg 8:17-23. Doris worked for the railroad for more than 20 years, and after she and Neal retired, they became snowbirds, traveling back and forth between their properties in New York and Florida. *Id.* at Pg 10:24-25; *id.* at Pg 32:11-24. Despite their respective ages, Doris and Neal were largely self-sufficient and were able to complete everyday tasks without receiving outside assistance. Doc. 425 – Pg 22:1-7.

In January 2015, while she was packing in her Florida home, Doris suffered a lower back injury. Doc. 202 – Pg 41:24-42:4. After experiencing no improvement over the course of several weeks, Doris was taken to Florida Hospital Waterman to receive treatment. *Id.* She was subsequently transported to Ruleme Center, an in-patient rehabilitation facility, where she spent the next several weeks.[1] Doc. 202 – Pg 46:22-47:6; *id.* at Pg 49:6-12.  During this time, unbeknownst to her, Neal was taken to Somerset. *Id.* at Pg 57:4-8. Upon completing her rehabilitation on March 23, 2015, Doris was transported directly from the rehabilitation center to Somerset, even though she believed she was being discharged home.[2] *Id.* at Pg 51:22-24; Doc. 385 – #8 (Exhibit 21).

From the outset, Doris made it clear to Somerset staff and its administrator Heiman that she did not want to be at the facility and repeatedly requested to leave to no avail. Doc. 421 – Pg 24:15-20; Doc. 424 – Pg 200:6-17. While she was there, Somerset never gave Doris a statutorily required resident contract, informed her of its grievance procedures, or provided her with a timely invoice reflecting the cost of

---

[1] Doris underwent cognitive testing at Ruleme Center that indicated she had no significant cognitive impairment and retained the capacity to decide where she wanted to be discharged. Doc. 385 – #8 (Exhibit 21). While Doris was at Ruleme Center, she expressed that she wished to be discharged to her home. *Id.*

[2] Prior to Doris's admission, Somerset's administrator, Heiman improperly revised Doris's AHCA Form 1823, which is a document completed by a doctor used to establish eligibility for residency in an assisted living facility. Doc. 421 – Pg 18:16-22:9. Heiman edited the form that had been completed by Doris's doctor to reflect that Doris required greater assistance and was "confused." *Id.*

her stay.[3]  Doc. 421 – Pg 26:13-19; Doc. 424 – Pg 190:7-10; *id.* at Pg 193:6-16; 196:3-23. Furthermore, Doris was informed that she would not be able to leave Somerset until her bill was paid. Doc. 425 – Pg 153:14-16; *id.* at Pg 206:15-16.

Somerset and Heiman also directly harmed Doris while she was held at the facility.  For example, Somerset did not properly respond on several occasions when Doris fell and was injured. Doc. 202 – Pg 76:19-80:14. Following an incident where Doris was taken to the hospital after she called 911 on her own, Somerset staff reprimanded her for calling 911 and instructed her not to call 911 again. Doc. 424 – Pg 200:7-17; Doc. 202 – Pg 85:25-87:18. Doris's medical records even reflect that she contemporaneously reported that her detention at Somerset was akin to "being in jail." Doc. 426 – Pg 101:16-102:13. Doris's medical records also reveal that she lost thirty pounds during her stay at Somerset. *Id.* at Pg 126:23-127:4.

Additionally, Somerset and Heiman improperly interfered with Doris's freedom of association.  They separated Doris from Neal, even though they had originally been permitted to share a room together. Doc. 421 – Pg 24:3-8. After Doris and Neal were separated, Doris was not freely permitted to see him and was not permitted to share daily meals with him in the common areas. Doc. 202 – Pg 68:9-69:2; *id.* at 126:14-126:17.

---

[3] Somerset only provided a bill to Doris's court-appointed guardian, Patricia Leininger after Doris had been at the facility for many months without a professional guardian being appointed. Doc. 424 – Pg 199:11-18.

Doris was also impacted by the physical abuse Neal suffered while they were at Somerset. Doc. 202 – Pg 125:16-24. Doris described an incident where Neal was forced to sleep in a chair as punishment for walking outside of Somerset past designated hours. *Id.* at Pg 114:23-116:12. On a different occasion, Doris described an incident where Neal was physically attacked by another resident at the facility resulting in significant visible injury and hospitalization. *Id.* at Pg 118:11-120:18.

After Doris realized her efforts to be released from the facility were futile, she contacted friends and family, including long-time friends Shelley and Kevin Carrier (the "Carriers") and sought their help in getting released. Doc. 425 – Pg 135:6-22. The Carriers attempted to intervene, and in July 2015, Doris and Neal requested that the Carriers transport them to execute advanced directives to facilitate Doris and Neal's removal from Somerset. *Id.* at Pg 135:15-136:4; *id.* at Pg 141:9-147:6.

Subsequently, to prevent Doris and Neal from leaving the facility, Somerset and Heiman contacted the Florida Department of Children and Families ("DCF"), who then initiated an exploitation investigation into the Carriers in August 2015. Doc. 421 – Pg 27:8-23. Somerset and Heiman, informed DCF that they were concerned the Carriers were exploiting Doris, despite having no evidence that the Carriers ever took money from Doris or Neal. Doc. 421 – Pg 27:8-23. Somerset and Heiman also misrepresented that to Doris and her friends and family that she was required to remain in Somerset due to a "hold order" issued by DCF that was actually

6

merely an email from DCF employee, Joyce Miller ("Miller"), that had no legal effect and was not created until months after the false representations concerning a "hold order" had been made. Doc. 425 – Pg 28:23-29:5; *id.* at Pg 123:3-7; Doc. 422 – Pg 45:5-48:9. Later, DCF initiated proceedings to have professional guardians appointed for Doris and Neal. *Id.* at Pg 48:10-13.

In December 2015 the Lake County Guardianship Court placed Doris in a limited guardianship and appointed Leininger as the limited guardian. Doc. 384 – # 8 (Exhibit 37). Leininger hired Nagel to serve as guardianship counsel.  Doc. 423 – Pg 32:5-12; Doc. 424 – Pg 143:14-17. Importantly, Doris retained her rights to freedom of association, freedom to travel, and freedom to choose her residence. Doc. 423 – Pg 47:11-18. In fact, the guardianship court specifically noted that it was the guardian's responsibility to facilitate Doris's move from Florida back to her home state of New York. Doc. 423 – Pg 30:1-5; *id.* at Pg 138:19-24.

Despite these explicit instructions, the order submitted and prepared by Nagel reflected that Doris did not retain her right to determine her residency, and this egregious mistake, in light of the court's clear instruction, was not corrected until the following month. Doc. 423 – Pg 21:10-14; Doc. 424 – Pg 147:18-21. Additionally, neither Nagel nor Leininger took any action to facilitate Doris's relocation to New York or otherwise assist Doris in having her civil rights restored. Doc. 423 – Pg 27:4-15; *id.* at Pg 46:17-21; *id.* at Pg 54:15-55:10.

On March 5, 2016, after being detained at Somerset for nearly a year, Doris was released from the facility after the Carriers stated they would call law enforcement if Doris was not permitted to leave. Doc. 425, at 166:11-167:2. At that time, Doris was forced to say goodbye to Neal. *Id.* at Pg 167:3-7. Unbeknownst to her, the two would part ways for the very last time, as Neal passed away in Somerset a month later. *Id.* at 168:2-20.

Soon after Doris escaped Somerset to New York, Leininger and Nagel against the court's explicit instructions endeavored to force Doris back into the State of Florida. Doc. 423 – Pg 54:15-56:9. To accomplish this, they coordinated with a third-party attorney to create the false impression that the filing was being issued by Doris's daughter and filed documents that sought to further limit Doris's rights to determine her residence and travel. *Id.* at Pg 46:17-21. When that effort failed, and after Doris had been living in New York for several months, Nagel and Leininger opposed a petition that requested a transfer of Doris's guardianship from Florida to New York to facilitate its administration where she resided. *Id.* at Pg 54:15-56:9. Despite the effort, the Carriers initiated guardianship proceedings in New York in 2018. Doc. 265 – Pg 24 -34. The New York guardianship court appointed a court evaluator, Kathryn Strodel ("Strodel), to evaluate whether Doris needed a guardian and to investigate the Florida guardianship proceedings. *Id.* at Pg 24. Strodel described the Florida guardianship as a "horror story" of financial abuse. *Id.* at Pg

29. Strodel determined that "no medical substantiation" existed for the Florida guardianship and no evidence suggests that the Carriers were financially exploiting Doris or acting contrary to her interests. *Id.* at Pg 33-34. The Florida guardianship, and Doris's assets, remained under Leininger's control until January 2019. Doc. 425 – Pg 172:15-20; Doc 423 – Pg 188:19-24.

For the nearly three years that it took to transfer Doris's guardianship to New York, Leininger and Nagel refused to give Doris any of her own money so that Doris could support herself. Doc. 424 – Pg 95:25-96:5. Strodel even notes in her investigative report that Doris does not need a guardian but that the Florida guardian refuses to release Doris's remaining assets unless a guardian was appointed in New York. Doc. 265 – Pg 33. The Carriers cared for Doris during that time paying for all her expenses providing for all of her needs. Doc. 425 – Pg 172:15-25.

After Neal passed away the month after Doris left for New York, Leininger became the personal representative of his estate, and Nagel was hired to be her counsel. Doc. 424 – Pg 52:22-24. Leininger and Nagel then, in control of both Doris's Guardianship and Neal's Probate, liquidated all the possessions that Doris and Neal had accumulated over the courses of their lives and prioritized the payment of Somerset's fees and the fees of other professionals in Florida that Doris neither wanted nor needed for three years. *Id.* at 94:22-95:8; *id.* at 132:5-21; Doc. 423 – Pg 186:6-187:10. Where Doris's interests were concerned, Leininger and Nagel acted

with plain disregard by, for example, providing her with only fifteen (15) days to pick up her personal possessions before they would be disposed of or sold. Doc. 423 – Pg 169:4-170:19. Meanwhile, Doris was living in New York and had no legal right to contract at the time. *Id.* at Pg 171:15-172:23. Thus, she was unable to pick up her possessions in the required timeframe, and as a result, Doris's personal property was liquidated. Doc. 423 – Pg 169:4-172:17; Leininger took no action to assist Doris in recovering what remained of her personal property. *Id.* at Pg 169:4-172:17.

Somerset and Heiman also engaged in improper and unauthorized transactions involving Doris's assets. As early as August 2015, Somerset and Heiman communicated with DCF employee Miller, with whom Heiman maintained a personal relationship, regarding Doris and Neal's financial status. Doc. 422 – Pg 30:7-17; Doc. 382 – #22 (Exhibit 51). Specifically, email correspondence reveals that Miller assured Leininger and Somerset that Doris and Neal had sufficient assets to turn a profit, including funds and assets to pay for a professional guardianship's expenses, legal fees, and other costs emphasizing the prospect of profit from Doris and her husband. Doc. 382 – #22 (Exhibit 51); Doc. 421 – Pg 28:22-29:11; *id.* at Pg 33:11-23; Doc. 422 – Pg 57:9-59:4; Doc. 382 - #31 (Exhibit 151). Heiman and Somerset employees even purchased some of Doris's own property, including tangible personal property and several pieces of her furniture, on behalf of Somerset. Doc. 421 – Pg 54:2-24.

10

Doris's rights were restored in September 2019 once her guardianship had been transferred to New York and what little remained of her assets were finally and reluctantly transferred from the Florida guardianship.  Doc. 424 – Pg 184:10-13; Doc. 425 – Pg 173:25-174:7.Due to the actions of Defendants, Doris was left with virtually nothing other than the suffering that she had endured from March 2015 through the restoration of her rights in September 2019, and was deprived of the opportunity to experience the final years of her life with her husband of nearly seventy years. Doc. 202 – Pg 157:13-158:10; Doc. 425 – Pg 172:23-25; Doc. 425 – Pg 168:2-5.

## III.    COURSE OF PROCEEDINGS

Doris initiated the lawsuit underlying the instant appeal on March 5, 2020. Doc. 1. She filed her amended, twenty-four-count Complaint on August 7, 2020, alleging claims against Defendants related to the false imprisonment, negligence, abuse, and exploitation she experienced during her Florida guardianship and her confinement at Somerset. Doc. 60. In January 2021, Doris passed away and in April 2021, Shelley Carrier, as the personal representative of Doris's estate ("Plaintiff"), was substituted in as the party plaintiff. Doc. 122; Doc. 128.

In November 2022, the Parties filed motions *in limine* and corresponding responses, disputing the admissibility of certain evidence. Doc. 299; Doc 300; Doc.

301; Doc. 302; Doc. 303; Doc. 305; Doc. 306; Doc. 307; Doc. 308; Doc. 309; Doc. 310.

Several Defendants, including Somerset, Heiman, Nagel, and Merideth Nagel, P.A. sought to exclude evidence related to Neal Hadcock. Doc. 299; Doc. 300; Doc. 301. Specifically, Somerset and Heiman asserted that evidence related to Neal's residency at Somerset should be excluded, and the Trial Court ruled that evidence of incidents "related to Mr. Hadcock [were] inadmissible unless the foundation [was] made that the evidence directly impacted [Doris]." Doc. 317 at 3. For example, evidence of an attack on Neal would be relevant only if Doris directly "observed the attack and felt unsafe." *Id.* The Trial Court also excluded reference to Neal's separate lawsuit against Somerset[4] and other defendants. *Id.* at 11.

The case proceeded to trial in February 2023. Doc. 370. At the outset of the trial, the following causes of action remained viable against the remaining Defendants: false imprisonment, negligence, intentional infliction of emotional distress, and elder exploitation pursuant to Section 825.103, Florida Statutes, against Somerset; false imprisonment and intentional infliction of emotional distress against

---

[4] A separate action brought by the personal representative of Neal's estate is pending against various defendants in Lake County, Florida in the lawsuit styled *Jarrod Scharber, as Successor Personal Representative of the Estate of Neal Hadcock v. Jest Operating, Inc. d/b/a Somerset, Elizabeth Heiman, Ann Varner, Coppen Guardianship Services, LLC, Michael J. Rogers, Gaylord & Rogers, LLC, Kimberly Schulte, Merideth C. Nagel, Merideth C. Nagel, P.A., and Patricia R. Leininger*, Fifth Judicial Circuit Case  No. 35-2021-CA-001050-AXXX-XX.

Heiman; false imprisonment, breach of fiduciary duty, intentional infliction of emotional distress, and elder exploitation pursuant to Section 825.103, Florida Statutes, against Leininger; breach of fiduciary duty, professional negligence, and elder exploitation pursuant to Section 825.103, Florida Statutes, against Nagel; breach of fiduciary duty, professional negligence against Nagel, P.A. Doc. 60.[5]

During the trial, several significant evidentiary rulings affected the ultimate disposition of the case, necessitating the instant appeal. First, the Trial Court excluded the relevant testimony and report of Plaintiff's first witness Strodel on an unbriefed *ore tenus* motion the morning that Strodel flew in to testify from New York to Florida. Doc. 421 – Pg 6:7-12:10. Even though Plaintiff stated that Strodel would testify about what she observed during her review of Doris's guardianship, the Trial Court ruled that her testimony was not relevant and that it could only *possibly* be admitted as rebuttal evidence if Defendants alleged that the Carriers exploited Doris. *Id.* The Trial Court maintained that neither Strodel's testimony nor her report prepared on behalf of the New York guardianship court would be permitted as evidence at several other points during the trial. Doc. 423 – Pg 67:20-68:3; Doc. 425 – Pg 246:19-247:3.

---

[5] Discussion of parties not the subject of the instant appeal are omitted from the brief, which includes Michael Rogers, Kimberly Schulte, Christian Waugh, and their respective law firms.

Throughout the trial, the Trial Court excluded evidence related to Neal's Probate on grounds of relevance ruling the evidence had already been disposed of on relevance grounds pursuant to the December 9, 2022 Order on Defendants' motions *in limine*. Doc. 423 – Pg 124:15-133:19. The Trial Court also excluded evidence relating to Neal's residency at Somerset at trial despite Plaintiff's clarification that the Order on the motions *in limine* only precluded evidence of Neal's residency at Somerset that it determined did not directly impact Doris. *Id.*

The Trial Court also granted several of Defendants' *ore tenus* motions for directed verdict and improperly limited evidence of noneconomic damages, both of which influenced the outcome of the trial. Doc. 426 – Pg 27:24-34:3; *id.* at Pg 141:14-153:6; *id.* at Pg 220:12-227:17; *id.* at Pg 229:10-232:1; *id.* at Pg 245:10-246:22. Specifically, the Trial Court instructed Plaintiff that several facts adduced as evidence which were relevant to pending claims could not be referenced before the jury. The Trial Court's ruling on Defendants' *ore tenus* motions for directed verdict, in effect, struck evidence that had already been adduced at trial including that Doris was reprimanded after a 911 call and was instructed not to call 911 and evidence that Somerset never provided Doris with a resident contract or a bill, among other things. *Id.* at Pg 147:1-153:6; *id.* at Pg 229:10-232:1. Though these facts were in evidence and no instruction was given to the jury to ignore that evidence or that the evidence was stricken, which it was not, the Trial Court instructed Plaintiff's counsel not to

comment on these facts in closing argument based on the directed verdict rulings. *Id*. Additionally, the Trial Court ruled that non-economic damages were not recoverable for claims of elder exploitation brought under Section 825.103, Florida Statutes, even though no party introduced any legal authority to support the notion that non-economic damages could not be awarded for such a claim. *Id.* at Pg 220:12-227:17.

At the conclusion of the trial, the jury rendered a verdict in favor of Plaintiff on the sole count of negligence against Somerset in the amount of $33,534.00, and against Plaintiff on all other counts against the remaining Defendants. Doc. 381. This appeal follows. Doc. 408.

## IV.    STANDARD OF REVIEW

A district court's evidentiary rulings, including rulings on motions *in limine*, are reviewed for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997); *Friedel v. Park Place Cmty. LLC*, 747 F. App'x 775, 777 (11th Cir. 2018). A district court abuses its discretion "where its decision rests upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact." *S. Grande View Dev. Co., Inc. v. City of Alabaster*, 1 F.4th 1299, 1305 (Fla. 11th Cir. 2021) (citing *Furcron v. Mail Ctr.'s Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016)). Reversal is warranted when an evidentiary ruling has a "'substantial prejudicial' effect warranting reversal of the jury's verdict." *Roundtree*

*v. Bowers*, No. 22-11557, 2022 WL 17986182, at *2 (11th Cir. 2022) (*citing Anderson v. WBMG-42*, 253 F.3d 561, 563 (11th Cir. 2001)).

A district court's rulings on motions for directed verdict are reviewed de novo. *Buland v. NCL (Bahamas), Ltd*., 992 F.3d 1143, 1148 (11th Cir. 2021). Examining the evidence in the light most favorable to the non-moving party, motions for directed verdict should only be affirmed where "'there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party on that issue.'" *Id.* (quoting *Cook ex. Rel. Estate of Tessier v. Sheriff of Monroe Cty*., 402 F.3d 1092, 1114 (11th Cir. 2005)).

## SUMMARY OF THE ARGUMENT

Throughout the course of the proceedings, the Trial Court made several errors necessitating a new trial. Specifically, the Trial Court abused its discretion by precluding the testimony and report of Strodel. This evidence was directly probative of Plaintiff's claims against Nagel and Leininger to demonstrate that Defendants did not provide Doris with financial support, keep her apprised of transactions related to her property, and that Defendants made misrepresentations, among many other things. The Trial Court's exclusion of the evidence substantially prejudiced Plaintiff by preventing her from being able to carry her burden of proof with respect to these claims. The Trial Court's striking of Strodel also substantially prejudiced Plaintiff by preventing Plaintiff from refuting Defendants' entire defense that the Carriers

16

were exploitation risks to Doris and that they were in possession of her report which advised that the Carriers posed no such risk.

Similarly, the Trial Court abused its discretion by excluding evidence of Neal's Probate that was relevant to Plaintiff's claims against Nagel and Leininger for breach of fiduciary duty, elder exploitation, and professional negligence. The precluded evidence demonstrated that Defendants were aware of the liquid assets available to pay for Doris's expenses, that one of Leininger's exhibits did not contain all of Defendants' transactions, and that certain assets characterized as belonging to Neal actually belonged to Doris. The exclusion of this evidence had the substantial prejudicial effect of creating the false impression that Defendants' actions, including their failure to provide Doris with support from her own funds or facilitate her relocation to New York, were justified. As a result, the Trial Court entered a directed verdict on the elder exploitation claims, and the jury returned a verdict in favor of Nagel and Leininger on the remaining claims.

Additionally, the Trial Court erred in granting Somerset's motions for directed verdict when it usurped the role of the jury, weighed the admitted evidence, and prevented Plaintiff from presenting admitted evidence to the jury to substantiate the negligence and intentional infliction of emotional distress claims against Somerset in closing argument. The Trial Court's ruling on directed verdict, which ruled Plaintiff could not argue specific facts admitted into evidence to the jury, prevented

17

Plaintiff from presenting the jury with all the facts substantiating Plaintiff's claims for the remainder of the trial, impacting its outcome. The dismissal of Plaintiff's elder exploitation claims under Section 825.103, Florida Statutes, on the basis that they did not contemplate non-economic damage, which also impacted the case's ultimate disposition, was error.

Finally, the Trial Court abused its discretion by excluding evidence of Neal's residency at Somerset. Evidence of Neal's residency at Somerset was significant and relevant to Plaintiff's claims against Somerset for negligence, false imprisonment, and intentional infliction of emotional distress, and its breaches of duties owed to Doris. The evidence illustrated the unsafe living conditions Doris endured at Somerset and the traumatic experience she had at the facility, which involved violence to her husband and the needless imposition of suffering. Preclusion of this evidence prior to trial resulted in a substantial prejudicial effect because it allowed Somerset to put forth an inaccurate representation of the facility as a place where residents were safe and properly cared for, which was not the reality. As a result, the jury was not able to develop an accurate understanding of life at the facility, which is reflected in the jury's verdict in favor of Somerset on all but one count. Even in the jury's award on the negligence count, the sum of the verdict itself demonstrates that the jury was not afforded adequate information to assess the gravity of what occurred in this matter.

## ARGUMENT

## I. THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING THE TESTIMONY AND REPORT OF KATHRYN STRODEL

Strodel was appointed as the Court Evaluator in the guardianship proceeding in New York pursuant to Mental Hygiene Law §81.09 in 2018 while both Leininger and Nagel presided over both Doris's Florida Guardianship and the administration of Neal's Probate. Strodel, under oath, submitted a report to the New York Supreme Court detailing her investigation relating to Doris and the ongoing Florida guardianship proceeding. Strodel's investigation included site visits and interviews with Nagel's law firm, the Carriers, Doris, Florida DCF, and others. Plaintiff intended to call Strodel, as the first witness at trial; however, Strodel was stricken on an unbriefed *ore tenus* motion on the basis that her proffered testimony regarding her observations and investigation were not relevant. Doc. 421 – Pg 6:5-12:4. Despite the fact that Leininger and Nagel controlled Doris's Guardianship and Neal's Probate until January of 2019 (during all materials times of Strodel's investigation and the publication of her report to the court), the Trial Court's ruling was made after counsel for Leininger represented to the Trial Court that any allegations relating Defendants' purported concerns of the potential for Doris's exploitation by the Carriers occurred ***before*** the New York proceedings and that Defendants were not going to accuse the Carriers of exploiting Doris as a defense for their actions. Doc. 421 – Pg 9-12. That representation proved false, and Strodel

19

was not afforded the opportunity to testify concerning her actual observations of Doris in New York, statements by Defendants in her interviews, and the resistance by Defendants to transferring the guardianship to the State of New York for years after Doris relocated.

### A.  The District Court Erred by Excluding Relevant Evidence Relating to Kathryn Strodel in Support of Doris' Claims.

Federal Rule of Evidence 401 states that evidence is relevant if it has "***any*** tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." The erroneous exclusion of evidence warrants reversal if it substantially prejudices a party or affects a party's substantial right. *Roundtree*, 2022 WL17986182, at *2; Fed. R. Evid. 103.

Strodel's testimony was probative of Doris's claims for breach of fiduciary duty, professional negligence, and elder exploitation because Strodel directly observed Defendants acting against Doris's best interests. While Leininger and Nagel were still active in the Florida guardianship proceeding, Strodel had observed, first-hand, the Carriers' home, Doris's living environment, her care, and well-being. Doc. 421 – Pg 8-9; Doc. 423 – Pg 67-68; Doc. 425 – Pg 246-247. At trial, counsel for Plaintiff proffered Strodel's anticipated testimony and report no less than three times. *Id.*

20

Even if, for the sake of argument, the Trial Court's ruling that Strodel's testimony that the Carriers were not exploiting Doris in 2018 was not relevant, the ruling excluded all of her other relevant testimony, which was direct corroborating witness testimony of exploitation by Defendants by a completely disinterested third-party who felt morally compelled to fly from Florida to New York to tell the jury what occurred in this case. The Trial Court erred by ruling that Strodel's testimony and her report were irrelevant, and therefore inadmissible, and its decision should be reversed.

### B.    Plaintiff was Substantially Prejudiced and Her Substantial Rights Were Affected by the Exclusion of Evidence Relating to Strodel.

A determination as to whether a substantial right of a party was affected requires an examination of the proceedings in their entirety to determine whether the error was harmless. *Kotteakos v. United States*, 328 U.S. 750 (1946). The exclusion of evidence that affects a party's ability to carry its burden of proof causes substantial prejudice or affects a party's substantial right. *Allen v. Montgomery Cnty., Ala.*, 788 F.2d 1485, 1490 (11th Cir. 1986). Evidence need not be actionable itself to be relevant and probative of a claim. *Id.* ("[E]vidence of prior discriminatory treatment of appellant, while not actionable itself, certainly was relevant and probative of the discriminatory attitudes of the defendant.") Exclusion of evidence is not harmless if it influences the jury. *Howard v. Gonzales*, 658 F.2d 352, 357 (5th Cir. 1981) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

The Trial Court abused its discretion by preventing Strodel from testifying at trial because the evidence was required for Plaintiff to carry its burden of proof. Doris sought damages from Leininger and Nagel for claims of breach of fiduciary duty, elder exploitation, and professional negligence. At trial, contrary to the representation by Leininger's counsel, Nagel and Leininger defended their actions by accusing the Carriers of exploitation and their ongoing concerns of exploitation. Doc. 243 – Pg 37-42, 71, 119, 173, 189-190. In ruling to exclude Strodel, the trial court reasoned that Defendants had not actually accused the Carriers of exploiting Doris. Doc. 421 – Pg 12.

Following the testimony from Nagel that she had legitimate concerns about the Carriers in March of 2016 (Doc. 423 – Pg 38), that she was frightened of these people (*Id.* at 41), and that her concern was the Carriers (*Id.* at 42), Plaintiff raised the issue again and sought to introduce Strodel's report. Doc. 423 – Pg 67:20-68:03. The trial court again excluded evidence related to Strodel. *Id.* at 67-68. Leininger similarly testified that she was concerned about Doris living with the Carriers (*Id.* at 173), that she was worried that the Carriers were going to take Doris's funds (*Id.* at 189), and that her concerns about the Carriers lasted from December of 2015 through January of 2019 (*Id.* at 189-190).

The testimony of Strodel was imperative to support Doris's claims against Nagel and Leininger. As detailed by the trial court in its pre-trial Omnibus Order, "The record reflects that Leininger liquidated every single asset and personal possession that Doris [..] had accumulated to pay Somerset's fees and the fees incurred by Leininger and Nagel. Doris Hadcock alleges many examples of actions Leininger and Nagel took that were contrary to orders issued by the guardianship court." Doc. 289 – Pg 6.  Leininger and Nagel kept Doris's Florida guardianship proceeding open until January 2019, almost three years after Doris left Florida to return to New York. The Carriers housed and cared for Doris in New York from 2016, through the date of her death in January 2021. *Id.* The Carriers did so, despite Leininger's refusal to provide Doris "with any money during the entire time she lived in New York." *Id.*

The exclusion of Strodel's testimony and report prevented Plaintiff the substantial right of refuting Defendants' entire defense and reasoning for their actions. It cannot be overlooked that Strodel was poised to provide significant testimony relating directly to Doris and the Defendants themselves, some of whom, she interviewed directly, or attempted to interview in 2018, while Leininger and Nagel were still actively in control of Doris's Guardianship assets and Neal's Probate, and while Leininger and Nagel were actively liquidating Doris's assets and refusing to provide any financial support to her.  Defendants were permitted to

perpetuate the falsehood that their hands were tied due to concerns of exploitation; however, Strodel's testimony would have entirely disproved this false narrative from the outset of the trial, which was fundamentally necessary for the case to be addressed on its merits.

Specifically, Strodel was prevented from providing testimony evidencing Nagel and Leininger's exploitation of Doris during the latter years of her guardianship when officials from New York were investigating the Florida guardianship, which Strodel described based on her own observations as a horror story. Doc. 265 – Pg 24-34. Strodel also was not permitted to testify that Defendants did not provide Doris with "any financial support or any of the proceeds from her belongings or real property" which she directly observed. *Id*. She further was prohibited from testifying that Leininger failed to contact Doris and failed to advise her of any of the transactions relating to her property or funds prior to a 2018 accounting. *Id*. She also was not permitted to testify that Nagel and Leininger received her findings in her report; and thus, the notion that Nagel and Leininger were justified in believing that the Carriers were a threat as of September 2018 was completely unwarranted. *Id.* She was also prevented from testifying as to the misrepresentations made by Nagel and Leininger that resulted in her recommendation of a forensic audit into the Florida guardianship. *Id*.

Given that the Trial Court granted directed verdict on the elder exploitation claims, and the jury returned defense verdicts on the breach of fiduciary duty, and professional negligence claims, Plaintiff was directly and significantly prejudiced by the Trial Court's exclusion of Strodel. The Trial Court's ruling hindered Plaintiff's ability to prove her cause of action by excluding a witness who observed Defendants' actions with respect to their misuse of her assets and misdirection of her estate was excluded in her entirety. Thus, Plaintiff was deprived of key evidence necessary to support Plaintiff's burden of proof on several claims that Plaintiff lost at trial.

### C.    Strodel's Testimony Was Not Cumulative and Was Necessary for Plaintiff to Pursue the Claims Against Defendants.

Strodel's testimony would not be cumulative of other trial testimony and is without self-interest in motivation for testifying. Strodel's testimony was especially important because Doris was deceased, and the Defendants were able to attack Shelley Carrier as an exploiter when she had repeatedly been vindicated of any such charge. Strodel was a direct witness to the falsity of one of Defendants' principal defenses, but she was prevented from testifying at trial, and thus, the jury was deprived of evidence necessary to support Plaintiff's burden of proof.

But for the exclusion of Strodel, Plaintiff would have been able to present evidence that Nagel and Leininger breached their fiduciary duties to Doris and that the key rationale supporting the defense that the Carriers were a looming threat

asserted by Nagel and Leininger was without merit. The Trial Court erred by ruling that Strodel's testimony and her report were irrelevant, and therefore inadmissible, resulting in substantial prejudice to Plaintiff constituting an abuse of discretion, and its decision should be reversed.

## II.　THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING EVIDENCE AND TESTIMONY RELATING TO NEAL'S PROBATE

The Trial Court abused its discretion by excluding evidence of Leininger and Nagel's administration of Neal's Probate following his death. Evidence relating to Neal's Probate should not have been excluded because it was clearly relevant to Plaintiff's claims to establish that Defendants acted against her interests. Defendants' acts with respect to Neal's Probate were against Doris's interests because she was the sole heir to the estate, and Defendants withheld any payment or distribution from Neal's Probate to Doris for three (3) years, while liquidating Doris's assets under the false pretense that she had no assets to fund her support.

### A.　The District Court Erred by Excluding Relevant Evidence Relating to Neal's Probate in Support of Doris' Claims.

The Trial Court abused its discretion by ruling that evidence of Neal's Probate was irrelevant, and therefore inadmissible. Doc. 423 – Pg 125:2-10; Doc. 423 – Pg 131:24; Doc. 423 – Pg 132:8-11. Relevant evidence is presumptively admissible. See Fed. R. Evid. 401; *U.S. v. Gonzalez*, 718 F. Supp. 2d 1341, 1347 (S.D. Fla. 2010); Evidence is relevant if it has "any tendency to make a material fact more or

less probable than it would be without the evidence." *U.S. v. Archible*, No. 21-14172, 2022 WL 16833770, at *2 (11th Cir. 2022); Fed. R. Evid. 401.

Evidence relating to Neal's Probate was relevant because Doris's lawsuit advanced, among other claims, claims of breach of fiduciary duty, elder exploitation, and professional negligence. Doc. 60. To meet her burden of proof to establish the element of breach in her claims for breach of fiduciary duty and professional negligence, Doris needed to adduce evidence at trial that Leininger and Nagel acted against the best interest of the ward. *See* Fla. Stat. § 744.361; Fla. Stat. § 744.108; Fla. Att'y Gen. Op. 96–94 (1996)*; see also Saadeh v. Connors*, 166 So. 3d 959, 964 (Fla. 4th DCA 2015). Similarly, Section 825.103, Florida Statutes, states that permanent or temporary deprivation of an elderly person's use of funds or assets for the benefit of another person gives rise to a claim of elder exploitation.

Evidence of Neal's Probate is relevant, and therefore admissible, because the evidence is probative of the material facts relating to the elements of breach, causation, and damages for the aforementioned claims. Plaintiff proffered that the evidence from Neal's Probate establishes that certain assets characterized as Neal's belonged to Doris. Doc. 423 – Pg 126:4-23; Doc. 300 – Pg 4; Doc. 307 – Pg 10. Plaintiff further proffered that the evidence in Neal's Probate establishes that Defendants used Neal's Probate to circumvent oversight from the guardianship court and to act without the requirement that they obtain a guardianship court order before

engaging in certain transactions, such as the sale of property or the issuance of payment to themselves or third parties. *Id.*[6]

The evidence of Defendants' conduct was not only relevant to establish Doris's claims, it also was relevant to refute Defendants' false assertion that all their transactions were contained in Leininger's Exhibit 133, which summarized Doris's guardianship accountings over time. Despite the emphasis from Defendants that all of Doris's property was accounted for "to the penny," the Trial Court excluded evidence that Defendants waived their duty to account for Neal's estate, which included all of Doris's property in New York, among other things. Doc. 423 – Pg 124:15-25.[7]

Plaintiff was also precluded from adducing evidence that Neal's Probate was held open for three (3) years while Defendants represented to the guardianship court that Doris had no means of support, justifying their hasty liquidation of assets. Supp. Appx. 1-27 (judicially noticed filings from Neal's Probate proceeding pursuant to Doc. 220 and Doc. 222). The excluded evidence also provided evidence

---

[6] Leininger and the Nagel Defendants owed a statutory obligation to Doris to account for her assets and to utilize those assets in her best interest. *See* Fla. Stat. § 744.361; Fla. Stat. § 744.362; Fla. Stat. § 744.365; Fla. Stat. § 744.367; Fla. Stat. § 744.3678.

[7] Defendants' accounting waiver eliminated a significant issue Defendants should have been confronted with at trial which was the irreconcilable nature the fact that Neal's probate estate dwindled from $190,456.49 to $42,038.74 before it was turned over to Doris's guardianship.

of clearly defined economic damages, the absence of which formed the basis for the Trial Court's directed verdict on the elder exploitation claims. *Id.*

Because evidence of Neal's Probate is probative of material facts relating to Doris's claims of breach of fiduciary duty, professional negligence, and elder exploitation against Leininger and Nagel, it was error for the Trial Court to exclude them. The Trial Court erred by ruling that evidence relating to Leininger and Nagel's administration of Neal's Estate was irrelevant, and therefore inadmissible, and its decision should be reversed.

> **B.    The District Court's Exclusion of Evidence Related to Neal's Probate Substantially Prejudiced Plaintiff and Affected Plaintiff's Substantial Rights by Preventing Her from Effectively Pursuing Her Claims Against Defendants.**

Erroneous evidentiary rulings warrant reversal of a verdict where they affect a party's substantial rights or produce a substantial prejudicial effect that materially influences the jury's verdict. *Allen*, 788 F. 2d at 1488; *Roundtree*, 2022 WL17986182, at *2. The Trial Court's exclusion of evidence related to Neal's Probate resulted in substantial prejudice to Plaintiff and affected Plaintiff's substantial rights, necessitating reversal. Significant prejudice arises from the fact that Leininger and Nagel heavily emphasized to the jury that "every penny" of Doris's money was accounted for by her guardianship. Doc. 420 – Pg 132:8-11201:7-203:3 (Doris's money accounted for "to the penny" and supported by "Court Order."); Doc. 423 – Pg 222:25-223:7; Doc. 423 – Pg 222:25-223:7; Doc.

29

424 – Pg 46:21-47:16; Doc. 424 – Pg 51:11-51:24; Doc. 424 – Pg 55:15-56:9; Doc. 427 – Pg 80:5-81:16.

The exclusion of evidence and testimony relating to Neal's Probate precluded the admission of evidence that Defendants did not account for "every penny" of Doris's funds or assets, and that they actually went out of their way to avoid accounting for Doris's assets. The exclusion of evidence was also significantly harmful because it permitted Defendants the opportunity to falsely justify their hasty liquidation of Doris's assets and their failure to provide Doris with living expenses. *See e.g.,* Doc. 424 – Pg 18:3-23; Doc. 427 – Pg 80:5-81:16; Doc. 133.

Accordingly, the jury was never permitted to see evidence that Defendants had liquid assets available for Doris's support, which created a significantly false impressions that Defendants' actions were necessary to support Doris financially. The ruling also concealed direct evidence that Defendants breached their duty of care to Doris by keeping Neal's Probate open for three (3) years and not distributing funds to Doris from her own assets or the assets to which she was the sole heir for her support. Defendants were permitted to take advantage of the jury's inability to see what Defendants were doing with two-thirds of the total assets Defendants controlled, all of which inured to Doris, either immediately by way of a family allowance or upon the conclusion of the estate. Even though these assets were technically within Neal's Probate, the assets and how they were treated become

30

directly relevant when there is a question of delay as to why they were not being transferred into Doris's Guardianship for a three-year period, during which time, Defendants justified their actions in the guardianship based on lack of funds.

Treating both estates in a vacuum when they are controlled by the same Defendants greatly misled the jury in this case, permitting Defendants easy and inaccurate justifications for their failure to financially support Doris and their failure to make efforts to move Doris to New York. In this way, the jury was left with a distorted and materially false depiction of the actual facts of the case and Doris's financial situation, which even undermined Plaintiff's experts ability to testify concerning their expert opinions. As a clear consequence of this exclusion of evidence, the jury returned defense verdicts for Leininger and Nagel, and the Court entered a directed verdict on the elder exploitation claims against Defendants.  The Trial Court's preclusion of evidence relating to Neal's Probate was made in error, and the error substantially prejudiced Plaintiff and affected the ultimate outcome of the case constituting an abuse of discretion, warranting reversal.

## III.    THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTIONS FOR DIRECTED VERDICT

The Trial Court erred by granting Defendants' motions for directed verdict for Plaintiff's claims of intentional infliction of emotional distress and elder exploitation. In addition to entering directed verdicts on particular claims, the Trial Court usurped the role of jury by weighing the evidence and dismissing various facts

that were introduced into evidence at trial, rather than permitting the jury to do the same. Claims of negligence, professional negligence, and intentional infliction of emotional distress were preserved in theory, but certain evidence admitted during trial in support of those claims was excluded by the Trial Court from being referenced in closing argument to the jury. Consequently, Plaintiff was not permitted to discuss relevant evidence that had been admitted at trial in closing arguments because of the Trial Court's directed verdicts on particular evidence which plainly usurps the role of jury.

Moreover, Plaintiff's elder exploitation claim under Section 825.103, Florida Statutes, was improperly dismissed because the Trial Court concluded that the statute did not contemplate non-economic damages, which is contrary to Florida common law applicable to the subject statute, contrary to the legislative intent behind the statute, and contrary to application of similar statutes providing causes of action for non-economic damages for tortfeasors causing harm to elderly individuals in Florida. The Trial Court's exclusion of non-economic damages for elder exploitation was the basis for its ruling entering a directed verdict due to the failure to satisfy the damages element. For these reasons, the Court's rulings should be reversed.

### A.    The District Court Improperly Usurped the Role of Jury, Dismissing Facts in Evidence Related to Surviving Causes of Action on Directed Verdict Resulting in Substantial Prejudice to Plaintiff.

When ruling on a directed verdict, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A judge is not permitted to weigh evidence that has been introduced, but instead determine whether credible evidence was proffered by the non-moving party. *See Johns v. Jarrod*, 927 F.2d 551, 557 (11th Cir. 1991); *see also Wells v. Warren Co.*, 328 F.2d 666, 668 (5th Cir. 1964) ("The law with respect to directed verdicts is well-settled. The Court should not grant a motion for a directed verdict if there is substantial credible evidence which would support a verdict in favor of the party against whom the motion is made. It is the function of the jury, not the court, to weigh and evaluate the evidence on both sides of a contested question. If there is a conflict in the evidence, the jury must resolve such conflict.")

During trial, the Trial Court improperly usurped the role of the jury, weighed the evidence, and dismissed facts admitted into evidence on directed verdict which supported Plaintiff's claims for negligence, false imprisonment intentional infliction of emotional distress against Defendants. *See* Doc. 426 – Pg. 145:17-21; *see also* Doc. 424 – Pg 190:3-191:22 (dismissing the fact entered into evidence that Somerset did not obtain an executed contract from Doris or provide monthly invoices as

required under Florida law in relation to the negligence claim); Doc. 426 – Pg 149:4-150:21 (excluding factual allegations and evidence for violations of Doris' dignity, safe living environment, and respect, such as being told not to call 911, reasoning that there are no damages in relation to the negligence claim); *id.* at Pg 229:9-231:24 (dismissing factual allegations and evidence relating to Doris being told not to call 911 by a Somerset employee in relation to Plaintiff's intentional infliction of emotional distress claim); *id.* at 147:9-14 (preserving factual allegation and evidence regarding the separation of Doris and Neal at Somerset in relation to the negligence claim); *id.* at 231:23-232:1 (preserving factual allegations and evidence relating to Doris' inability to leave Somerset until her invoices were paid in relation to intentional infliction of emotional distress claim).

The Trial Court's erroneous ruling and premature weighing of the evidence usurped the role of the jury and precluded Plaintiff from referencing testimony discussed by multiple witnesses, that had been admitted into evidence and presented to the jury, relating to Doris being told by a Somerset employee that she was not allowed to call 911. *See e.g.,* Doc. 421 – Pg 54:25-55:23; Doc. 422 – Pg 109:25-110:2; Doc. 424 – Pg 200:2-22, 220:19-24; Doc. 426 – Pg 87:1-10. The Trial Court's ruling also precluded Plaintiff from referring to trial testimony from various witnesses—including Somerset's own corporate representative—that Doris never executed a statutorily required contract agreeing to reside at Somerset. *See e.g.,* Doc.

34

421 – Pg 17:23-18:15, 20:3-5, 26:13-27:7; Doc. 423 – Pg 59:10-13; Doc. 424 – Pg 190:3-191:22 (Plaintiff's expert opining that the contract is required by law and the lack of any contract is a breach of the standard care by Somerset); 193:10-194:6, 195:1-14, 221:16-20; Doc. 426 – Pg 92:3-19, 124:11-125:11.

These rulings are antithetical to the role of the judge when deciding a directed verdict. The Trial Court should not have weighed the evidence, usurping the role of the jury, and instead permitted the jury to determine whether reasonable inferences from the evidence supported Plaintiff's claims for false imprisonment, negligence, and intentional infliction of emotional distress. *See Anderson*, 477 U.S. at 255.

The dismissal of evidence, for example, of Defendants' failure to have a resident contract for Doris, is evidence of express statutory breach establishing of negligence pursuant to Sections 429.24(1) and (2), Florida Statutes.  Florida law requires by statute not only that this evidence be admitted, but that it be capable of presentation to the jury because it arises out of Florida's Resident's Rights Statute designed to protect the self-determination and dignity of elderly citizens. Whether a jury determines the violation has attendant damages is within the exclusive purview of the jury.  Here, this evidence is not only statutorily required as a matter of law as is plain from the statute itself, but the absence of such a contract along with the evidence of illegal alteration of admissions documents and evidence of a false representations concerning a non-existent hold order, where there is a pending claim

for false imprisonment would be no less important for that separate and distinct claim as evidence that Defendants did, in fact, hold Doris against her will. The same is true of precluding reference to Somerset reprimanding Doris for calling 911 and excluding reference to this evidence in closing argument, as it clearly and directly impacted Plaintiff's ability to convince the jury that Doris was being held against her will to establish her claim for false imprisonment. Surely, the question of why she did not just call the police had to be a question for the trier of fact, and the Plaintiff was silenced to address a specific instance where Defendant directly interfered with Doris's ability to seek help.

The Trial Court's weighing of evidence and subsequent exclusion of evidence during directed verdict ultimately rendered Plaintiff's case incoherent and incomplete, and as a result, Plaintiff not only lost claims on directed verdict, but also was deprived of evidence to establish her claims of negligence, elder exploitation, false imprisonment, intentional infliction of emotional distress, and professional negligence. Plaintiff was deprived of the ability to effectively argue the totality of the circumstances involving claims against Somerset, Heiman, Leininger, and Nagel during closing arguments. As a result, the jury was not afforded the opportunity to draw their own legitimate inferences, and only contemplated disjointed aspects of Plaintiff's causes of action, rather than a complete picture of the facts of the case or even the complete evidence admitted at trial. Accordingly, the Trial Court's

exclusion and weighing of evidence when deciding the directed verdict was plain error and should be reversed based upon a de novo review, or, if viewed as an evidentiary error, should be reversed as an abuse of discretion.

**B.    The District Court Erred in Dismissing the Elder Exploitation Claim on Directed Verdict Based on an Absence of Economic Damages Because Section 825.103, Florida Statutes, Contains no Limitation Precluding Recovery of Noneconomic Damages.**

Florida's elder exploitation statute, Section 825.103, Florida Statutes, does not contain any reference to "actual damages." Instead, Section 825.103, Florida Statutes is read in conjunction with Section 772.11, Florida Statutes, which provides "actual damages" as a remedy based on a violation of the elder exploitation statute. Notably, neither statute defines "actual damages" as including or excluding non-economic damages, thereby resulting in an ambiguity regarding the nature of damages allowable under Section 825.103, Florida Statutes.

When construing an ambiguous statute, Florida courts have reviewed the legislative history of that statute, which may be instructive in determining the legislature's intent. *Lummus v. Fla. Adirondack School*, 123 Fla. 810, 826 (Fla. 1934) ("[in] construing both the Constitution and the statutes, we may look to the historical background to determine the cause and intent of enactments"); *State v. Jefferson*, 758 So. 2d 661, 665 (Fla. 2000); *Rollins v. Pizzarelli*, 761 So. 2d 294, 299 (Fla. 2000) (utilizing legislative committee report to analyze statute's history and determine intent).

Here, a 2021 legislative staff analysis report regarding Section 825.103, Florida Statutes (the "Legislative Report"), is instructive in determining the legislature's intent. Specifically, the Legislative Report provides a background summarizing the various justifications for amendments to Section 825.103, Florida Statutes, including the high elderly population in Florida and statistics regarding elder abuse. *See* H.R. Fla. Staff An., No. 1041 (Fla. May 5, 2021). Within that summary the Legislative Report explicitly notes that "[e]lder abuse can have significant physical and emotional effects on an older adult and can lead to premature death." *Id*.

Based on the Legislative Report's recognition of the "emotional effects" of elder exploitation, there is an implication that the legislature was contemplating such emotional effects in amending Chapter 825.103. Given the heighted concern about the potential for elder exploitation, and the specific statutory penalties aimed at deterring the practice, the discussion of non-economic considerations suggests that the legislature recognized that victims of elder exploitation should be able to recover for such non-economic harms attendant to their exploitation, which Doris certainly endured in the instant case. This is incompatible with a reading that the statute has any expressed intent to limit recoverable damages to economic damages and preclude non-economic damages. Accordingly, the Legislative Report supports the

notion of the legislature's intent that "actual damages" include non-economic damages.

Additionally, if a statute does not define a term, the court may "resort to definitions of the same term found in case law." *Rollins*, 761 So. 2d at 298. Both Florida and federal courts have concluded that for certain causes of actions, it is appropriate for actual damages to include non-economic damages. In *Miami Herald Pub. Co. v. Brown*, 66 So. 2d 679, 680-81 (Fla. 1953), the court determined that in the context of a libel cause of action, "actual damages" can be compensatory in nature and include damages for mental suffering or injury to reputation in addition to economic damages. Similarly, in *McLean v. GMAC Mortg. Corp.*, 398 Fed. Appx. 467, 471 (11th Cir. 2010), this Court agreed that under the Real Estate Settlement Procedures Act ("RESPA"), "actual damages" could include non-economic damages in the form of damages for emotional distress. *See also Rowell v. Holt*, 850 So. 2d 474, 482 (Fla. 2003) (noting that compensatory damages resulting from false imprisonment may include mental suffering); *Hagan v. Coca-Cola Bottling Co.*, 804 So. 2d 1234, 1238 (Fla. 2001) (holding that emotional distress damages are appropriate in the context of the ingestion of a contaminated food or beverage). To prove emotional distress damages in the RESPA context, a plaintiff must present evidence establishing a causal link between the financing institution's violation and their injuries. *McLean*, 398 Fed. Appx. At 471. Evidence may be adequate if it is

comprised solely of the plaintiff's testimony and sufficiently articulates demonstrable emotional distress. *Id.*

Here, Doris was subjected to elder exploitation as evidenced by her testimony regarding the unnecessary sale of her home and belongings, and Defendants' trafficking in her personal property. *See* Doc 202: Pgs. 106:1-24 (Doris testifying that the sale of her personal belongings was sickening and unjust), 108:4-109:7. In comparison to *McLean*, Doris's emotional harm as a consequence of elder exploitation is much more analogous to the corollaries where "actual damages" were deemed to include non-economic damages. *See Brown*, 66 So. 2d at 680-81; *Holt*, 850 So. 2d at 482. Even in a far more purely economic context this Court has determined that non-economic damages in the consumer protection context under RESPA—an act meant to ensure that consumers in the home mortgage market are informed on the settlement process and protected against abusive practices—is proper. *See* 12 U.S.C.A. § 2601(a); *McLean*, 398 Fed. Appx. At 471. Thus, it is evident that based upon the Legislative Report and willingness of courts to extend non-economic damages to a variety of causes of actions, in this case, the Florida Legislature intended for Section 825.103, Florida Statutes, to provide for the recovery of non-economic damages.  In the context of fiduciaries, like Nagel and Leininger, who are solely responsible for inventorying and accounting for an incapacitated individual, elimination of exposure to non-economic damages renders

40

that statute virtually toothless.  Accordingly, the Trial Court's dismissal of the Elder Exploitation claims because non-economic damages are not recoverable under the statute was error, and the Trial Court's dismissal of the elder exploitation claims should be reversed.

### C.    Plaintiff Adduced Evidence at Trial Sufficient to Avoid Directed Verdict Even if the Elder Exploitation Claims Were Limited to Economic Losses.

On appeal, the grant or denial of motion for directed verdict is analyzed under the same standard used by the district court. *Oxford Furniture Cos., Inc. v. Drexel heritage Furnishings, Inc.*, 984 F. 2d 1118, 1122 (11th Cir. 1993); *MacPherson v. Univ. of Montevallo*, 922 F. 2d 766, 770 (11th Cir. 1991). Specifically, courts should consider all evidence and reasonable inferences in the light most favorable to the nonmoving party. Evidence was adduced at trial that Leininger and Nagel violated the elder exploitation statute by depriving Doris of her money permanently or temporarily to the benefit of a third party. Doc. 423 – Pg 102:25-105:120; 194:9-195:21 (unauthorized overpayment by Leininger to Somerset); Doc. 423 – Pg 195:16-196:19 (Leininger admits to unauthorized sale of fixtures and tangible personal property to Heiman and Somerset employees); Doc. 423 – Pg 106:6-108:9 (Nagel testifies incorrectly that Doris was not permitted to have money and that personal property was unaccounted for); Doc. 423 – Pg 109:2-110:8 (testimony that Doris had no money when her husband's estate had been open for a year and was

valued at in excess of $190,000). In fact, under the Section 825.103, Florida Statutes, a breach of fiduciary duty is sufficient to constitute elder exploitation, and thus, the submission of the breach of fiduciary duty claims to the jury while dispensing with the statutory claims with the same standard plainly demonstrates the error on this issue.

There are additional examples of facts supporting statutory breach with financial damages throughout the trial transcript, but one example alone is sufficient to avoid directed verdict. *See Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165, 1170 (11th Cir. 1991) (holding that testimony regarding specific element of trade dress infringement claim sufficient to permit submission of issue to the jury). Accordingly, the Trial Court erred in entering directed verdict on Plaintiff's elder exploitation claims, and the judgment should be reversed.

## IV. THE TRIAL COURT ABUSED ITS DISCRETION BY EXCLUDING SIGNIFICANT EVIDENCE OF NEAL'S RESIDENCY AT SOMERSET, WHICH SUBSTANTIALLY PREJUDICED PLAINTIFF

The Trial Court abused its discretion by excluding significant evidence of Neal's residency at Somerset because the evidence was relevant to Plaintiff's claims against Somerset and Heiman for negligence, false imprisonment, and intentional infliction of emotional distress. The evidence was also relevant of Somerset and Heiman's breaches of the duties owed to Doris and the non-economic harm she suffered while at Somerset. Furthermore, the preclusion of such evidence harmed

Plaintiff by substantially prejudicing Plaintiff and affecting Plaintiff's substantial rights by preventing her from effectively establishing the required burdens of proof for her claims. Accordingly, because the Trial Court abused its discretion, and such abuse of discretion substantially prejudiced Plaintiff, reversal is warranted.

### A. The Trial Court Erred by Excluding Relevant Evidence of Neal's Residency at Somerset in Support of Doris' Claims.

The Trial Court erred in excluding evidence of Neal's residency at Somerset due to relevancy. Evidence should be excluded on a motion *in limine* "only if the evidence is clearly inadmissible for any purpose." *Stewart v. Hooters of Am., Inc.*, No. 8:04-cv-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). Relevant evidence is presumptively admissible. *See* Fed. R. Evid. 401; *U.S. v. Gonzalez*, 718 F. Supp. 2d 1341, 1347 (S.D. Fla. 2010). Evidence is relevant if it has "any tendency to make a material fact more or less probable than it would be without the evidence." *U.S. v. Archible*, No. 21-14172, 2022 WL 16833770, at *2 (11th Cir. 2022); Fed. R. Evid. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, but exclusion on such grounds is an "'extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility.'" *U.S. v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010) (quoting *U.S. v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003)).

Evidence of the general conditions of long-term care facility can be relevant to claims brought by specific residents. *Tucker Nursing Ctr., Inc. v. Mosby*, 692 S.E.2d 727, 731 (Ga. Ct. App. 2010); *Mitchell v. State*, 491 So. 2d 596, 598-99 (Fla. 1st DCA 1986). For example, in *Mitchell v. State*, a Florida appellate court affirmed the lower court's decision to admit evidence of poor care provided to residents of an adult congregate living facility that were not the victims specified in the information and "testimony related to the general conditions" of the facility because it was relevant to the claims at hand. *Mitchell*, 491 So. 2d at 597. Similarly, in *Tucker Nursing Center, Inc. v. Mosby*, an appellate court in Georgia held that evidence of poor care received by nursing home residents other than the plaintiff was admissible because it was relevant to the conditions of the facility at the time the plaintiff lived there and was therefore pertinent to the plaintiff's claims of negligence and violations of state law. *Tucker Nursing Center, Inc.*, 692 S.E.2d at 731 (Ga. Ct. App. 2010).

This case is like *Mitchell* and *Tucker Nursing Center*. In the same way that evidence of the conditions of and care provided to residents living at the facilities in those cases was relevant to claims concerning specific individuals, evidence of Neal's residency at Somerset illustrates the conditions at Somerset and is thus relevant to Doris's claims. More specifically, evidence of what happened to Neal while he was at Somerset with Doris is relevant to proving Somerset's breaches of

the various duties it owed to Doris under Chapter 429, Florida Statutes, which governs the standard of care assisted living facilities owe their residents. For example, even though Doris did not observe[8] Neal being attacked by another Somerset resident, Doris was aware of the attack, and that same resident was freely permitted to reside in the facility in the same unit as Doris following the incident. *See* Doc. 224 – Pg 195:7-12; *id.* at 194:8-13; *id.* at Pg 120:13-25 (Doris describes aftermath of the attack on Neal). Doris also, though she did not view the attack itself or his hospitalization, did bear direct witness to Neal's physical injuries, and this was deeply upsetting and distressing to her, and thus, this evidence bears on Doris's non-economic damages and provides further support for her claims of negligence, false imprisonment, and intentional infliction of emotional distress.

This evidence is directly relevant to whether Somerset breached its duty to ensure Doris lived "in a safe and decent living environment, free from abuse and neglect." Fla. Stat. § 429.28(1)(a). Similarly, while Doris did not see Neal when he was forced to sleep in a chair as punishment for walking outside the facility past designated hours, she was apprised of the episode, and it expressly illustrates the conditions present at Somerset and the degree to which she suffered in not being able to escape the facility. Accordingly, this evidence is clearly relevant to Doris's

---

[8] The Court ruled that if Doris did not observe the incident firsthand, evidence of the incident was inadmissible on relevance grounds, including her observations of her husband's injuries and witnessing him cry for the first time.

claims for negligence, false imprisonment, and intentional infliction of emotional distress against Somerset and Heiman in terms of relevance to Defendants' standard of care and to Doris's damages from being held in that environment.

Evidence of Neal's residency should not have been broadly excluded by the Trial Court in ruling on Defendants' motions *in limine* because the evidence is probative to "[the] material fact" that Somerset breached its duties owed to Doris, making her damages more significant. *Stewart*, 2007 WL 1752873, at *1; *Archible*, No. 21-14172, 2022 WL 16833770, at *2. The evidence was not "inadmissible for any purpose," and thus, the Trial Court erred by ruling that evidence of incidents occurring during Neal's stay at Somerset was irrelevant, unless Doris witnessed the incidents firsthand, and inadmissible. *Id.* Accordingly, the Trial Court's decision should be reversed.[9]

_____

[9] Additionally, evidence of Neal's residency at Somerset should not have been excluded under the Federal Rule of Evidence 403, which only precludes evidence with "'undue tendency to suggest a decision on an improper basis.'" *Stoe v. Garland*, No. 16-1618 (JDB), 2021 WL 4169313, at * 2 (D.C. Cir. Sept. 14, 2021) (citing *U.S. v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013)). Evidence of Neal's stay and treatment at Somerset does not tend to "suggest a decision on an improper basis." To the extent that this evidence also relates to claims brought by Neal's personal representative pending in state court, that fact alone does not bear on the relevance or admissibility of the evidence in the instant case. Any risk of the evidence confusing or misleading the jury was not substantially outweighed by the evidence's probative value. Fed. R. Evid. 403. However, excluding evidence of Neal's residency and treatment at Somerset in this case impermissibly deprived the jury of relevant evidence. *See Parish v. City of Elkhart*, 702 F.3d 997, 999-1001 (7th Cir. 2012); *Hartman v. Snelders*, No. 04 CV 1784 (CLP), 2010 WL 11626508, at *1 (E.D.N.Y. Jan. 28, 2010).

**B.    The Trial Court's Exclusion of Evidence Related to Neal's Residency at Somerset Substantially Prejudiced Plaintiff by Preventing Her from Effectively Pursuing Her Claims Against Somerset.**

Erroneous evidentiary rulings warrant reversal of a verdict where they affect a party's substantial rights or produce a substantial prejudicial effect that materially affected the jury's verdict. *Allen*, 788 F. 2d at 1488; *Roundtree*, 2022 WL17986182, at *2. The Trial Court's broad exclusion of evidence related to Neal's stay at Somerset was not only erroneous, but it also resulted in substantial prejudice to Plaintiff and affected her substantial rights, necessitating reversal.

In this case, the Trial Court's decision to exclude all evidence related to Neal's residency at Somerset unless it was established that Doris observed it or it had a direct impact on Doris substantially prejudiced Plaintiff and affected her substantial rights by preventing her from effectively pursuing her claims against Somerset. Evidence of the abuse Neal suffered at Somerset, the aftermath of which Doris directly observed, while not observing the incidents themselves, both illustrate the environment of the facility and the general treatment provided to residents and what Doris's actual experience was at Somerset, which was not an ordinary assisted living facility experience. The exclusion of this evidence enabled Defendants to paint a misleading picture of the facility. For example, throughout the trial, Defendants were permitted to convey to the jury that the residents were well cared for, assisted with their activities of daily living, and were able to receive medical treatment.  Doc. 420

47

– Pg 150:18-152:2; Doc. 420 – Pg 159:1-23; Doc. 427 – Pg 51:2-24; Doc. 424 – Pg 218:25-220:2. Defendants were even allowed to present a photograph of unknown Somerset residents "sitting around a piano" in a room with decorations during a "cancer awareness celebration," putting forth the image of Somerset they wanted the jury to see, an image with an unknown date, unknown residences, and unknown participants over Plaintiff's objection.

On the other hand, evidence of abuse, negligence, and poor treatment of residents at Somerset, and not just any resident, but Doris's own husband, which was evidence reflecting Doris's experience at Somerset and evidence of how adverse incidents at the facility had a profoundly negative impact on her, was excluded. Since Doris only observed her husband's injuries and his demeanor, her testimony concerning what she observed was excluded as irrelevant because she did not directly observe the underlying incident itself.

As a result, the jury was provided with an inaccurate representation of the facility as a place where residents were safe and properly cared for, which was not the reality. Plaintiff's claims were hamstrung, as Doris's video deposition testimony was sterilized to exclude facts that should have been presented to the jury as to what actually occurred at Somerset based on her observations. These observations were critical to fully establish how Somerset breached the duties it owed to Doris and to explain to the jury why this lawsuit was not a an ordinary situation of an elderly

individual not wishing to be in an assisted living facility. Accordingly, Plaintiff was substantially prejudiced in pursuing her claims and establishing her burdens of proof against Somerset and Heiman.

The effects of the preclusion of this evidence and the resulting inability of the jury to develop an accurate understanding of life at Somerset is reflected in the verdict. The jury ruled against Somerset on the sole claim of negligence, awarded relatively nominal damages that match to the penny the amount of money her guardian paid to the facility, and ruled in favor of the facility and the other Defendants on all other claims. Consequently, the Trial Court's preclusion of evidence relating to Neal's residency at Somerset substantially prejudiced Plaintiff, affected Plaintiff's substantial rights, and impacted the ultimate outcome of the case, constituting an abuse of discretion and warranting reversal.

## CONCLUSION

For the reasons contained herein, Appellant-Plaintiff, SHELLEY CARRIER, as the Personal Representative of the Estate of DORIS HADCOCK, respectfully requests this Court reverse the final judgement with instructions to vacate, grant a new trial, and remand for further proceedings.

Date: June 7, 2023

BLEAKLEY BAVOL DENMAN & GRACE

*/s/ Grant W. Kindrick*
Grant W. Kindrick, Esq.
Victoria M. McLaughlin, Esq.
15316 N. Florida Avenue
Tampa, Florida 33613
Telephone: (813) 221-3759
Facsimile: (813) 221-3198
gkindrick@bbdglaw.com
vmclaughlin@bbdglaw.com
*Attorneys for Appellant, Shelley Carrier as*
*Personal Representative of the Estate of*
*Doris Hadcock*

50

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Rule 32-4 of the Eleventh Circuit Rules this document contains 12,400 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365, in 14-point Times New Roman font.

Date: June 7, 2023

*/s/ Grant W. Kindrick*
Grant W. Kindrick, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June, 2023, a copy of the foregoing upon counsel for Defendants-Appellees by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to:

Robert B. George
The Liles Firm, PA
50 N. Laura Street, Suite 1200
Jacksonville, FL 32202
rgeorge@thelilesfirm.com
*Counsel for Merideth C. Nagel and Merideth Nagel, P.A.*

Phillip S. Smith
McLin Burnsed
26736 U.S. Highway 27, Suite 202
Leesburg, FL 34748
phils@mclinburnsed.com
*Counsel for Patricia R. Leininger*

Daniel J. Kersey
McLin Burnsed
26736 U.S. Highway 27, Suite 202
Leesburg, FL 34748
danielk@mclinburnsed.com
*Counsel for Patricia R. Leininger*

Loren M. Vasquez
McLin Burnsed
26736 U.S. Highway 27, Suite 202
Leesburg, FL 34748
lorenv@mclinburnsed.com
*Counsel for Patricia R. Leininger*

Thomas A. Valdez
Quintairos, Prieto, Wood & Boyer, P.A.
1410 N. Westshore Blvd, Suite 200
Tampa, FL 33607
tvaldez@qpwblaw.com
*Counsel for Jest Operating, Inc. d/b/a Somerset and Elizabeth Heiman*

Dinah S. Stein
Hicks, Porter, Ebenfeld & Stein, P.A.
5301 Blue Lagoon Drive, 9th Floor
Miami, FL 33126
dstein@mhickslaw.com
*Counsel for Jest Operating, Inc. d/b/a Somerset and Elizabeth Heiman*

*/s/ Grant W. Kindrick*
Grant W. Kindrick, Esq.